UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JARROD N. GANT,

        Plaintiff,

  v.                                Case No. 19-C-640

CPT. CUSHING,
CO MATUSHAK,
CO GIBBS,
CO LUTERMAN,
CO KORPITA,
CO ADKINS,
CO HERTZ,
NURSE GARLAND,
and SGT. RETZLAFF,

        Defendants.

---

## SCREENING ORDER

---

The plaintiff, who is currently serving a state prison sentence at Green Bay Correctional Institution (GBCI) and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

On May 9, 2019, the court ordered that the plaintiff would not be required to pay an initial partial filing fee and gave the plaintiff 21 days to notify the court if he wished to voluntarily dismiss the action to avoid the possibility of incurring a strike under 28 U.S.C. § 1915(g). To date, the plaintiff has not filed a notice of voluntary dismissal. Accordingly, the court will proceed to screen the plaintiff's complaint.

## SCREENING OF THE COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## ALLEGATIONS OF THE COMPLAINT

On March 31, 2019, Captain Cushing, Sergeant Retzlaff, Officer Gibbs, and other correctional officers responded to a medical emergency situation in the cell next to the plaintiff's in the Restricted Housing Unit (RHU) of GBCI. The neighboring inmate "was causing self harm and refusing to cooperate with staff." Dkt. No. 1 at 5. The inmate was warned that if he did not

comply with their orders, the officers would be forced to use an incapacitating chemical agent on him. After the warning was issued to the neighboring inmate, the plaintiff yelled out his door, requesting that he be pulled out of his cell before the incapacitating agent is used because he has asthma and has needed medical treatment in the past when a chemical agent has been used against a neighboring inmate. The plaintiff alleges that Cushing ignored his yelling, continued to address his neighboring inmate, and, after about ten minutes, Retzlaff administered an incapacitating chemical agent into the neighboring inmate's cell without turning off the ventilation system in that wing of the RHU.

Following the use of the incapacitating chemical agent, the plaintiff immediately pushed his medical emergency intercom and told an officer that he needed to be taken out of his cell because fumes from the neighboring cell began to enter his cell. After two to three minutes, the plaintiff observed Officer Gibbs outside his cell "choking from the chemical agents," and another officer went and retrieved gas masks for the officers. *Id.* at 6. The plaintiff then began to choke, felt his throat restrict, and began to panic.

After fifteen to twenty minutes, Officer Korpita came to the plaintiff's cell door and allegedly observed him laying on his cell floor. The plaintiff was also allegedly unresponsive to Korpita's attempts to get him to come to the door to be restrained so that he could receive medical attention. Cushing came to the plaintiff's cell door and also attempted to get him to come to the door to be restrained. After a "long period of time," Cushing ordered Retzlaff to assemble a cell extraction team to remove the plaintiff from his cell. *Id.* at 7.

After the cell extraction team arrived five to ten minutes later, Cushing attempted once more to get the plaintiff to come to the door for about three to five minutes. As a result of the plaintiff's

3

continued non-responsiveness, Cushing ordered the extraction team into his cell. Gibbs took the lead position and allegedly jumped on the plaintiff and turned him over while forcing his face into the floor. Officers Matushak, Korpita, Hertz, and Adkins entered the plaintiff's cell and forcibly placed him in restraints. Officer Luterman recorded the extraction and did not come into direct contact with the plaintiff. The plaintiff was placed in a wheel chair and taken to the health services unit (HSU).

At the HSU, Nurse Garland took the plaintiff's vitals, listened to his lungs, and observed his breathing. During this time the plaintiff was being held up by two officers and was having difficulties breathing. While the plaintiff continued to struggle to breathe, Garland allegedly asked him "what are you doing" and instructed him to breathe. *Id.* at 9. After three to five minutes, Cushing and Garland allegedly asked the plaintiff why he was having this reaction, stated that the chemical agent used can be used on people with asthma, and said they have never seen someone react like this to the spray. Garland then allegedly asked the plaintiff, "What would you like me to do for you right now? How can I help you at this time?" *Id.* at 10. The plaintiff did not respond to Garland's question. Cushing then ordered the plaintiff be escorted back to his cell.

"A short time later," Cushing came to the plaintiff's cell and informed him that he would be issuing him a conduct report for misuse of medical health services. The plaintiff alleges that as a result of the defendants' actions, his shoulder and back were injured and the failure to provide him treatment resulted in physical and emotional pain. The plaintiff seeks monetary relief, in the form of compensatory and punitive damages, and a preliminary and permanent injunction preventing the defendants from using an "extraction team against any non-threatening inmate who is in the event

4

of suffering a serious medical emergency" and "not administer chemical agents against an inmate who is inflicting self harm." *Id.* at 18; Dkt. No. 7.

### THE COURT'S ANALYSIS

Taking the plaintiff's allegations as true, which the court must do at this stage, the plaintiff's complaint is sufficient to state a claim against Gibbs, Matushak, Korpita, Hertz, Adkins, and Cushing related to their use of force during the cell extraction.

Regarding the officers involved in the cell extraction of the plaintiff and placement of him in the restraint chair, the plaintiff's complaint states a claim for excessive force against Gibbs, Matushak, Korpita, Hertz, and Adkins. "'[W]here prison officials are accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically cause harm.'" *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "[T]here are a number of factors that a court must consider in determining whether excessive physical force has been used such as 'the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner.'" *Id.* (quoting *Hudson*, 503 U.S. at 7).

The plaintiff alleges that while he was unresponsive on his cell floor as a result of his exposure to the incapacitating agent, Gibbs entered his cell as part of the cell extraction team, and placed his full body weight on him and pressed his face into the ground. The plaintiff also alleges that Matushak, Korpita, Hertz, and Adkins forcefully placed him in the restraint chair. These

5

actions allegedly resulted in injuries to the plaintiff's shoulder and back. Consequently, the plaintiff may proceed on a claim of excessive force against Gibbs, Matushak, Korpita, Hertz, and Adkins.

With respect to Luterman, "individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003)). The plaintiff's complaint alleges that Luterman's only involvement was to record the cell extraction, and does establish any causal connection between Luterman's recording and any alleged constitutional deprivation. Consequently, Luterman will be dismissed as a defendant.

Turning to Cushing, who ordered correctional officers to conduct the cell extraction of the plaintiff, "a supervisor may still be personally liable for the acts of his subordinates if he 'approves of the conduct and the basis for it.'" *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). "'[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.'" *Id.* (quoting *Chavez*, 251 F.3d at 651). According to the complaint, Cushing approved of the conduct as he ordered the cell extraction and authorized the correctional officers' use of force against the plaintiff. Consequently, the plaintiff may proceed on a claim against Cushing under a theory of supervisor liability.

Turning to Retzlaff's authorization of the use of the incapacitating chemical agent against the neighboring inmate and the resulting exposure of the plaintiff to the agent, "under the Eighth Amendment, pepper spray may be used in limited quantities when reasonably necessary to subdue, or maintain control over, an inmate." *Lindsey v. Boughton*, No. 17-cv-52-jdp, 2018 WL 3824143,

at *4 (W.D. Wis. Aug. 10, 2018); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). The use of pepper spray violates the Eighth Amendment, however, when "used in quantities greater than necessary to maintain discipline or 'for the sole purpose of punishment or the infliction of pain.'" *Lindsey*, 2018 WL 3824143, at *4 (quoting *Trotter v. Kingston*, No. 05-C-1032, 2007 WL 984089, at *4 (E.D. Wis. Mar. 27, 2007)). "Bystander exposure to pepper spray is analyzed under the same legal test. Even when bystanders do nothing to necessitate the use of pepper spray, there is no constitutional violation unless officers are shown to have acted maliciously and with the intent to harm." *Id.* at *5; *Clement v. Gomez*, 298 F.3d 898, 903–04 (9th Cir. 2002).

Retzlaff's use of the incapacitating chemical agent did not violate the plaintiff's constitutional rights as it was done to subdue an inmate and not for the sole purpose of inflicting harm to either that inmate or the plaintiff. The complaint states that the neighboring inmate was threatening self-harm and refusing to comply with instructions from the correctional officers. The plaintiff asserts in his complaint and in his motion for a preliminary injunction and temporary restraining order (Dkt. No. 7), that Retzlaff's use violated Wisconsin's Administrative Code. The statute which addresses the use of chemical agents, Wis. Admin. Code § DOC 306.09, permits the use of incapacitating agents "to prevent death or bodily injury to oneself or another." According to the allegations in the plaintiff's complaint, Retzlaff's use the of incapacitating agent was permitted under the statute as it was used for that very purpose: to prevent the neighboring inmate from injuring himself.

The plaintiff's incidental exposure to the incapacitating agent as a result of the failure to turn off the ventilation system also did not violate his constitutional rights. While even direct exposure to pepper spray causes discomfort, courts in this circuit have held that exposure to pepper spray does

7

not create a substantial risk to an inmate's health. *Boyce v. McKnight*, No. 14-cv-418, 2015 WL 8778330, at *10–11 (N.D. Ill. Dec. 15, 2015) (collecting cases). Accordingly, Retzlaff will be dismissed as a defendant and the plaintiff's motion for a preliminary injunction and temporary restraining order will be denied.

Regarding Garland, the Eighth Amendment prohibits the infliction of cruel and unusual punishment as a sentence for a crime. U.S. Const. amend. VIII. It protects an inmate from a governmental actor's deliberate indifference to his basic needs, including an inmate's medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To state a claim for deliberate indifference to a serious medical need, a plaintiff must allege an objectively serious medical condition and that an official was subjectively aware of that condition and deliberately indifferent to it. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

When the plaintiff arrived in the HSU, Garland assessed him and, according to the complaint, asked him what could be done to help him. The plaintiff offered no response. According to the complaint it took the plaintiff a number of minutes to regain his breath. As stated earlier, courts in this circuit have held that exposure to pepper spray does not ordinarily create a substantial risk to an inmates' health. In addition, according to the complaint Garland did not ignore his condition, as she checked his vitals and inquired as to what could be done to aid him. Although Garland may have used different treatments in the past on the plaintiff for previous exposures, her decision not to use them here does not rise to a constitutional violation. "Mere medical malpractice or a disagreement with a health professional's medical judgment is not deliberate indifference." *Trotter v. Kingston*, No. 05-C-1032, 2007 WL 984089, at *4 (E.D. Wis. Mar. 27, 2007) (citing

8

*Estelle*, 429 U.S. at 106; *Greeno*, 414 F.3d at 653). The complaint does not allege that his condition worsened because of Garland's inaction, and he was able to regain his breath during the minutes he was in the HSU. Consequently, Garland will be dismissed as a defendant.

The court finds that the plaintiff may proceed on the following claims: excessive force against Gibbs, Matushak, Korpita, Hertz, and Adkins, and a claim against Cushing under a theory of supervisor liability for authorizing the use of force.

### MOTION FOR APPOINTMENT OF COUNSEL

The plaintiff also filed a motion for appointment of counsel. Civil litigants do not have a constitutional or statutory right to appointed counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). The plaintiff's motion appears to be an exact copy of the one that he filed in his other case, *Gant v. Adkins, et al.*, 19-C-172, Dkt. No. 18, with a different case number filled in. For similar reasons, the motion will be denied without prejudice. There is no indication that the plaintiff does not have the competence to present himself as his filings are clear and well organized, the case is not complex and involves straightforward Eight Amendment claims, and he has not provided any evidence of his attempts to obtain legal counsel.

**IT IS THEREFORE ORDERED** that this case is referred to Magistrate Judge Nancy Joseph for all pretrial proceedings in accordance with 28 U.S.C. § 636(b)(1). The magistrate judge will decide all non-dispositive motions (i.e., motions to compel, motions to recruit counsel, and motions to amend pleadings). A party may serve and file objections to an order deciding a non-dispositive issue within 14 days of being served with a copy. This court will consider any timely objection and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

*See* Fed. R. Civ. P. 72(a). The magistrate judge will also issue a report and recommendation concerning any motion for injunctive relief or dispositive motions that are filed (i.e., motions to dismiss and motions for summary judgment). Either party may object to the magistrate judge's report and recommendation within 14 days of being served with a copy. This court will conduct a de novo review of any part of the magistrate judge's recommendation that has been properly objected to and will either accept, reject, or return the matter to the magistrate judge with instructions. *See* Fed. R. Civ. P. 72(b). The case will return to this court for trial, if necessary.

**IT IS FURTHER ORDERED** that Sgt. Retzlaff, CO Luterman, and Nurse Garland are **DISMISSED**.

**IT IS FURTHER ORDERED** that the plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order (Dkt. No. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's Motion to Appoint Counsel (Dkt. No. 12) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $350.00 balance of the filing fee by collecting monthly

payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another institution, the transferring institution shall forward a copy of this order along with the plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility. If the plaintiff is no longer incarcerated at a Prisoner E-Filing Program institution, he will be required to submit all correspondence and legal material to:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Dated at Green Bay, Wisconsin this  5th  day of June, 2019.

                                            s/ William C. Griesbach
                                            William C. Griesbach, Chief Judge
                                            United States District Court